## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MATTHEW B. KREPPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 11 C 8787** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| **NIIT (USA), INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Matthew Krepps, in his complaint, alleges that on September 4, 2000, Economist's Advocate (an LLC of which the plaintiff is the sole principal), entered into a Joint Venture Agreement ("JVA") with an entity called Cognitive Arts. (Compl., Ex. 1). The purpose of the JVA was to develop and market educational content to Insead, an international graduate business school, or other similar institutions. The JVA was to run for a five-year term, with either party able to elect an earlier termination if no agreement had been entered into with Insead by January 1, 2001. In a section entitled "Conversion Option," the JVA provided that if either party terminated the joint venture, Economist's Advocate would have the option to "convert its share in the JVA into common stock of [Cognitive Arts] for two years from the date on which the JVA is terminated." (Compl., ¶ 13; *see also Compl.,* Ex. 1, p. 3-4).

Another section of the JVA entitled, "Successors and Assigns," contains a provision that the JVA would be binding on any entity that acquired Cognitive Arts, or its assets, and that an exercise of the conversion option, would give Economist's Advocate an ownership interest in the acquiring entity. Specifically, the Successors and Assigns section states, "the provisions of the 'Conversion Option' … shall be interpreted, *mutatis mutandis*, to give effect to the parties' Intention that

[Economist's Advocate] shall have the option to convert its interest in the JVA into either equity of [Cognitive Arts] or any successor entity to [Cognitive Arts] if [Cognitive Arts] is acquired by a third person." (Compl., ¶ 15; *see also* Compl., Ex.1, p. 5). Additionally, "Neither [Cognitive Arts] nor [Economist's Advocate] will enter into any agreement providing for the sale (*whether by way of asset sale*, sale of a controlling portion of its voting equity securities or merger) to, or otherwise allow itself to be sold to, any third person unless such third person and the owners thereof agree to be bound hereby, ... as fully as if such persons were originally named as parties here in lieu of [Cognitive Arts] or [Economist's Advocate], as the case may be." (Compl., ¶ 16; *see also* Compl, Ex. 1, p. 5) (emphasis added).

No agreement with Insead was ever reached, and Cognitive Arts elected to terminate the JVA some time in the middle of 2001. Economist's Advocate exercised its Conversion Option under the JVA by a letter to Cognitive Arts dated May 1, 2003, within the requisite two-year period after termination of the JVA. (Compl., Ex. 2). The defendant, NIIT (USA), Inc., "acquired"[1] Cognitive Arts sometime in 2003. (Compl., ¶18; *see also* Compl., ¶ 36).[2] On May 23, 2003, Cognitive Arts was dissolved and ceased operations as an independent entity. At some unspecified point, Economist's Advocate assigned all of its rights under the JVA to the plaintiff.

The complaint contains two claims, each alleging a breach of contract. Count One alleges the following: That the JVA between Economist's Advocate and Cognitive Arts was a binding contract; that Economist's Advocate fulfilled all of its contractual obligations under the JVA and

---

[1] The defendant, in its response, contests this characterization arguing that it was an asset purchase.

[2] The exact date of acquisition is not stated in the complaint. The defendant's motion gives an asset purchase date of February 3, 2003, which if true, would mean that the plaintiff attempted to exercise his option in Cognitive Arts *after* its purchase by the defendant but *before* the alleged date of its dissolution. Neither party clarifies whether the conversion option was exercised before or after NIIT's purchase.

timely exercised its right to convert its interest in the joint venture into stock of Cognitive Arts pursuant to the contract's Conversion Option; that pursuant to the Successor and Assigns section of the contract, when the defendant acquired Cognitive Arts, it did so subject to all its terms, including those specified in the Conversion Option; that at the time of purchase, the defendant had full knowledge of the JVA, its Conversion Option, and specifically, Economist's Advocate's right to convert its interest in the JVA into an interest in Cognitive Arts; that, consequently the plaintiff, as the assignee of Economist's Advocate, was entitled to an ownership interest in NIIT, because it was the successor in interest to Cognitive Arts; and that NIIT has refused to honor that interest resulting in a breach of contract denying the plaintiff the compensation he was entitled.

In Count Two, the complaint alleges that the plaintiff, as assignee of the rights of Economist's Advocate, is a third-party beneficiary to the "contract of acquisition between Cognitive Arts and NIIT." (Compl., ¶ 41). In support of his complaint, the plaintiff attached two exhibits, a copy of the JVA between Economist's Advocate and Cognitive Arts and a letter addressed to Cognitive Arts exercising the Conversion Option under the agreement. (Compl., Ex. 1, 2).[3] However, the plaintiff has not attached a copy of the "contract of acquisition between Cognitive Arts and NIIT." (Compl., ¶ 41).

The defendant now moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. At issue, is whether the NIIT is Cognitive Art's successor in interest, which depends, in part, on the exact nature of the defendant's purchase of Cognitive Arts. The plaintiff, in his complaint and response, characterizes the purchase of Cognitive Arts as an acquisition: "the defendant's own website states 'Cognitive Arts was acquired by NIIT in 2003.'" (Compl., ¶¶ 18,

---

[3] Under Rule 10(c), a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

3

36); that "Cognitive Arts continues to operate as a division of NIIT." (Compl., ¶ 18); "[t]here was a continuity of the business enterprises between Cognitive Arts and NIIT, including continuity of management, employees, location and assets." (Compl., ¶ 21); [t]hat "[S]hareholders and leaders of Cognitive Arts … became leaders of Cognitive Arts as a division of NIIT." (Compl., ¶ 22); and, that, after an opportunity for discovery, the plaintiff anticipates having evidence that some "shareholders of Cognitive Arts became shareholders of NIIT." (Compl., ¶ 22)[4].

In contrast, the defendant insists that it is not a successor in interest to Cognitive Arts because the transaction was only an asset purchase for cash, not stock, and there was no continuity of ownership between NIIT and Cognitive Arts. Additionally, the Asset Purchase Agreement ("APA") memorializing the transaction between the defendant and Cognitive Arts expressly excluded the defendant from liability under any pre-existing agreements with Economist's Advocate and precluded the creation of any third-party beneficiaries. In support of its argument, the defendant has attached, as an exhibit to its memorandum, a portion of the APA (Def.'s Mem., Ex. A). Also attached is a declaration by NIIT's Chief Financial Officer that the submitted APA is, "a true and correct copy of the *corresponding portions* of the original Asset Purchase Agreement."(Def.'s Mem., Ex. B) (emphasis added).

Part of the defendant's argument relies on the general rule under Illinois law that "'a corporation that purchases the assets of another corporation is not liable for the debts and liabilities of the seller.'" *Manh Hung Nguyen v. Johnson Mach. & Press Corp.*, 433 N.E.2d 1104, 1106-1107

---

[4] Presumably this assumption is based on the complaint's allegation that certain shareholders and leaders of Cognitive Arts became leaders of Cognitive Arts as a division of NIIT. The defendant argues this is "speculation," "merely conclusory" and, "does not represent a triable allegation of fact." (Def.'s Mem., at. 8). The allegations may be found untrue, but that does not make them speculative or conclusory in the sense that they should not be deemed true.

(1ˢᵗ Dist. 1982). The defendant acknowledges there are recognized exceptions to this rule but argues that the incomplete portions of the APA that it submitted are dispositive on the question of successor liability and that the only way for the plaintiff to survive a 12(b)(6) motion is to have plead facts sufficient to satisfy one of those exceptions.[5]

Rule 12(b)(6), Federal Rule of Civil Procedure, provides that a district court shall dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint must be construed in a light favorable to the plaintiff, and the court must accept as true all material facts alleged in the complaint. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare

---

[5] The defendant's memorandum gives a lengthy legal analysis under Illinois law of the various exceptions and the required elements of each exception. *See generally, Manh Hung Nguyen,*, 433 N.E.2d at 1106-1107. Specifically, the defendant argues the only applicable exception is a *de facto* merger, but although the complaint alleges a continuity of shareholders, a requirement for *de facto* merger, that allegation is "speculation," "merely conclusory" and, "does not represent a triable allegation of fact," because complaint goes on to say that the plaintiff anticipates, after discovery, having evidentiary proof. (Def.'s Mem., p. 8; *see* Compl, ¶ 22 ). But even in the context of pleading fraud, the Supreme Court and the Seventh Circuit have upheld pleadings based on evidence reasonably anticipated after further investigation or discovery. *See Rotella v. Wood,* 528 U.S. 549, 560, (2000); *Corley v. Rosewood Care Center, Inc. of Peoria,* 142 F.3d 1041, 1050–1051 (7ᵗʰ Cir.1998) (relaxing particularity requirements of Rule 9(b) where RICO plaintiff lacks access to all facts necessary to detail claim)(cited approvingly in *Rotella*).

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

However, under Rule 12(d) of the Federal Rules of Civil Procedure, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Worried that a plaintiff "could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit," the Seventh Circuit and other courts have carved out a "narrow exception," *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002), the purpose of which "is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus, Inc., 300 F.3d at 735*. Under the exception, district courts are permitted to examine documents attached to a motion to dismiss if they are "referred to in the complaint," "*central to the plaintiff's claim*," and "*concededly authentic*." *Tierney* 304 F.3d at 738. *See also Geinosky v. City of Chicago*, __F.3d._, 2012 WL 1021141 (7th Cir. 2012); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *Albany Bank & Trust Co. v. Exxon Mobile Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). However, "documents that are neither included in the plaintiff's complaint, central to the claim, [nor appropriate for judicial notice,] should not be considered on a motion to dismiss," *Albany Bank*, 310 F.3d at 971, and a document in support of a Rule 12(b)(6) motion "that required discovery to authenticate or disambiguate" would require a judge "to convert the defendant's motion to a Rule 56 motion if he were minded to consider the document in deciding whether to grant the motion." *Tierney*, 304 F.3d at 739.

In *Hecker*, the court rejected the argument that the district court erred in considering documents attached to a motion to dismiss because the documents "were concededly authentic," as

well as "central to the plaintiffs' claim." 556 F.3d at 582. And *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir.1994) upheld the court's consideration of an agreement quoted in the complaint and central to the question whether a property interest existed for purposes of 42 U.S.C. § 1983. *See also Venture Associates v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir.1992) (admitting letters, to which the complaint referred, that established the parties' contractual relationship); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 739 (7th Cir.1986) (permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA). While the Seventh Circuit "has been relatively liberal in its approach to the rule articulated in *Tierney* and other cases," *Hecker,* 556 F.3d at 582, "[t]he exception is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Tierney,* 304 F.3d at 738 (internal quotations omitted).

The defendant asserts that the APA between the defendant and Cognitive Arts should be considered without converting its motion into one for summary judgment. While the APA is not referred to explicitly by name in the complaint, the complaint does reference a "contract of acquisition" between defendant and Cognitive Arts in Count Two. (Compl., ¶ 41). Presumably, at least according to the defendant, the APA is the written agreement between Cognitive Arts and NIIT. Significantly, the plaintiff's response brief does not deny it. Since Count Two of the complaint is entirely premised on the existence of such a contract between Cognitive Arts and the defendant then the APA is central to the plaintiff's claim if only with respect to Count Two.[6]

---

[6]
 On its face, Count One relies primarily on the JV. But since any "acquisition" by one company of another requires an agreement of some kind, Count I relies on the subsequent agreement or at least implicitly refers to it.

However, the defendant does not mention or address the third requirement of the exception to Rule 12(d), that the documents be concededly or inarguably authentic.  The plaintiff does not concede the APA's authenticity.  In fact, the plaintiff's response argues that portions of the Asset Purchase Agreement provided by the defendant are "misleading and incomplete." (Pl.'s Resp., p. 4).  Among other reasons, in a declaration, attached as an exhibit to the plaintiff's response, the plaintiff claims that certain corresponding pages of the APA, as provided by the defendant, contain different language than the version of the APA in the plaintiff's possession.  (Pl.'s Resp., Ex. A.).[7] The plaintiff has attached, as Exhibit B, a document that  purports to be page 7 of the APA, that contains different language than the APA submitted by the defendant.

Because the APA is not concededly authentic, the extraneous APA does not fall under the "narrow exception" to Rule 12(d) as carved out by the Seventh Circuit in *Tierney* and similar cases. It must either be excluded or the defendant's motion must be converted into one for summary judgment.  The later option is not appropriate  given that there are many  unresolved factual disputes, and the defendant has not sought relief under Rule 56.   Since no argument is made that the complaint does not make out a plausible case for breach of contract **insert this is wrong** see motion itself and since the defendant's motion is predicated on the APA it has submitted, its exclusion requires that the defendant's motion to dismiss the complaint be denied.

Nothing in this ruling should be taken as any indication of a view on the merits of the plaintiff's case or the merits of any defenses that might be raised.

---

[7]

 The plaintiff claims he received his copy of the APA from Cognitive Arts during discovery in an unrelated lawsuit filed in the Southern District of New York.

ENTERED: _____
                    UNITED STATES MAGISTRATE JUDGE

DATE: 4/20/12