# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW B. KREPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 8787 |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| NIIT (USA), INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff is an economist who, during the pertinent period, was a faculty member with Insead, a French business school with multiple campuses in Europe, Asia and the Middle East. His company, Economist's Advocate, entered into a Joint Venture Agreement with a company called Cognitive Arts, the purpose of which was the development and marketing of business course materials.[1]  The result was litigation in the Southern District of New York and now in this District. Here, the plaintiff is suing Cognitive Arts' successor, NIIT (USA), Inc., to enforce a stock option he had under the Joint Venture Agreement, whose  labyrinthine provisions  seem designed to conceal rather than to elucidate the parties' true purpose.

Upon the termination of the joint venture, Mr. Krepps claims that the Joint Venture Agreement entitles him to convert his shares in the joint venture to Cognitive Arts common stock. NIIT acquired Cognitive Arts in February 2003 and is involved here because the Joint Venture Agreement stated that its provisions would:

> be binding upon [Economist's Advantage] and [Cognitive Arts] and their respective
> successors and assigns.  Without limitation of the foregoing, the provisions of the

---

[1] Throughout its submissions, NIIT refers to the Joint Venture Agreement as "the Letter Agreement." (*NIIT's Memorandum of Law*, at 2).

[shares conversion option] shall be interpreted, *mutatis mutandis*, to give effect to the parties' intention that [Economist's Advocate] shall have the option to convert its interests in the [joint venture] into either equity of [Cognitive Arts] or any successor entity to [Cognitive Arts] if [Cognitive Arts] is acquired by a third person.

(*Amended Complaint*, Ex. 1). NIIT is moving for summary judgment, arguing that because of what happened in the New York litigation, plaintiff is judicially estopped from maintaining the current claim.

# I.
# BACKGROUND

## A.
## Summary Judgment Under Local Rule 56.1

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, –, (7th Cir. 2012). Local Rule 56.1 requires a party seeking summary judgment to include with its motion "a statement of material facts as to which the ... party contends there is no genuine issue and that entitle the ... party to a judgment as a matter of law." Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). Each paragraph must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005).

The party opposing summary judgment must then respond to the movant's statement of proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment,"

Local Rule 56.1(b)(3)(C); *Ciomber*, 527 F.3d at 643.  Again, each response, and each asserted fact, must be supported with a reference to the record.  Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Bay Area Business Council, Inc.*, 423 F.3d at 633.

The district court is entitled to enforce strict compliance with its local rules regarding summary judgment motions.  *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011); *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3d 626, 630 (7th Cir.2010).  Responses and facts that are not set out and appropriately supported in an opponent's Rule 56.1 response will not be considered, *see Shaffer*, 662 F.3d at 442 (court need not consider any fact not  contained in the parties' Rule 56.1 statements); *Bay Area Business Council*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in 56.1 submission).  And of course, the evidence must be admissible at trial.  *See Lopez v. Ford Motor Co.,* 2012 WL 1021796, 3 (N.D.Ill. 2012)(collecting cases); *Gbur v. City of Harvey, Ill.,* 835 F.Supp.2d 600, 607 (N.D.Ill. 2011)(collecting cases); Andrew Polovin and Andrew MacNally, *Practical and Strategic Considerations for Addressing Evidentiary Issues at Summary Judgment,* The Circuit Rider 21 (May 2013).

**B.**
**FACTS**

The previous litigation was in the Southern District of New York in 2001.  *Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 Civ. 9468 (RWS).  (*Def.St.*, ¶ 7; *Pl.Rsp.*, ¶ 7).  Economist's Advantage, the plaintiff's firm, sued Cognitive Arts and Insead in the aftermath of the joint venture.  The plaintiff alleged that he had entered into an agreement to terminate the joint venture with the two under which he released his stock option rights and intellectual property rights in exchange for a promised payment of $500,000.  (*Def.St.*, ¶ 8; *Pl.Rsp.*, ¶ 8; Dkt. 43-3, ¶¶ 11-12).

Cognitive Arts and Insead apparently didn't come through with the money, and this led to plaintiff's breach of contract and *quantum meruit* claims, among others.

In his *quantum meruit* claim, plaintiff alleged that:

[a]t the specific request of [Cognitive Arts], [Economist's Advantage] agreed to release its rights under the Letter Agreement and the Development Agreement, and assigned its intellectual property rights in the Course Materials to INSEAD and INSEAD OnLine.

It is further claimed that Economist's Advantage is "entitled to the fair value of the release of its rights under the [Joint Venture] Agreement and the Development Agreement, and the fair value of the intellectual property rights in the Course Materials that it assigned to INSEAD and INSEAD OnLine, which together exceed $8,000,000." (*Def.St.*, ¶ 9, *Pl.Rsp.*, ¶ 9; Dkt. 43-3, ¶¶ 33-34).[2]

In February 2003, while the litigation was pending in New York, the defendant here, NIIT, acquired Cognitive Arts. (*Amended Complaint*, ¶ 24). Also while the litigation was pending, on May 2, 2003, Economist's Advantage, acting through plaintiff, informed Cognitive Arts that it was exercising the Joint Venture Agreement's conversion option. (*Def.St.*, ¶ 10; *Pl.Rsp.*, ¶ 10; *Amended Complaint*, ¶ 45). It also informed Cognitive Arts that "[t]his exercise of [Economist's Advantage's] conversion rights is without prejudice to any position that [Economist's Advantage] has taken or may take in the [SDNY litigation]." (*Def.St.*, ¶ 11; *Pl.Rsp.*, ¶ 11). Of course, the position it had taken was that it had released its rights to exercise that option. Cognitive Arts ceased operating as an independent entity on May 23, 2003. (*Amended Complaint*, ¶ 35).

---

[2] Plaintiff made the same allegations in a claim for unjust enrichment. (Dkt. # 43-3, ¶¶37-38).

The SDNY litigation went to trial in November 2004. Economist's Advantage prevailed on its *quantum meruit* claim. (*Def.St.*, ¶ 14; *Pl.Rsp.*, ¶ 14). The court entered judgment in its favor in the amount of $320,000. (*Def.St.*, ¶ 15; *Pl.Rsp.*, ¶ 15).

## II.
## ANALYSIS

### A.
### Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed.R.Civ.P. 56(a). While a party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible, the movant "always bears the initial responsibility" of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 496-97 (7th Cir. 2011); *Stevens v. Housing Authority of South Bend, Indiana*, 663 F.3d 300, 305 (7th Cir. 2011). This is done by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 324; *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 979 (7th Cir.1996) ("Only after the movant has articulated with references to the record and to the law specific reasons why it believes there is no genuine issue of material fact must the nonmovant present evidence sufficient to demonstrate an issue for trial.").

Once "a properly supported motion for summary judgment is made," the nonmoving party bears the burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted); *Seng-Tiong*, 648 F.3d at 496-97. Notably, any party asserting that a fact is or is not genuinely

disputed must cite "to particular parts of materials in the record," or show that "an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). Thus, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256; *Seng-Tiong*, 648 F.3d at 497. Additionally, a "court need consider only the cited materials." Fed.R.Civ.P. 56(c)(3).

NIIT argues, first, that it is entitled to summary judgment under the doctrine of judicial estoppel. It explains that the plaintiff's position in the New York suit was that he terminated or released his stock option rights, as a result of which he was relegated to his (successful) *quantum meruit* claim. And, because he succeeded on his *quantum meruit* claim, he cannot take a contrary position here. Yet, says the defendant, that is exactly what he is doing. The plaintiff contends that he is not taking a contrary position; that in the New York litigation, his *quantum meruit* claim for the value of his release morphed into a claim for the value of services he rendered to Insead, and that claim was not dependent on his release of his stock option rights.

As an alternative to its judicial estoppel argument, NIIT contends that it merely purchased the assets of Cognitive Arts and that the Joint Venture Agreement was expressly excluded from the assets Cognitive Arts was assigning. It acknowledges that there are a few exceptions to the general rule regarding corporate successor liability but that none of those are applicable here. The plaintiff contends that at least one, if not more of them is.

## B.
## Judicial Estoppel Is Inapplicable

The Supreme Court most recently explored the doctrine of judicial estoppel in *Zedner v. United States*, 547 U.S. 489 (2006):

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in
> maintaining that position, he may not thereafter, simply because his interests have
> changed, assume a contrary position, especially if it be to the prejudice of the party
> who has acquiesced in the position formerly taken by him. This rule, known as
> judicial estoppel, generally prevents a party from prevailing in one phase of a case
> on an argument and then relying on a contradictory argument to prevail in another
> phase.

*Id.* at 504 (quotations omitted). The Court went on to explain that while the equitable doctrine could not be reduced to a precise formula, several factors typically informed the decision whether to apply it: the party's later position must be clearly inconsistent with its earlier position; the party must have succeeded in persuading the district court to accept its earlier position; the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. 547 U.S. at 504. The dispute the parties have here is whether the plaintiff succeeded in persuading the district court in New York to accept his previous position that he released his stock option rights. If he did, judicial acceptance of his position that he still has that option would create the perception that the plaintiff either gulled the court in the Southern District or is attempting to do so here. *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011).

For NIIT, there can be no question that the plaintiff succeeded on his *quantum meruit* claim which required the court to find that the plaintiff released his stock option rights. Accordingly, he cannot maintain a contradictory position here, as he is explicitly doing. That at least is the theory. However, the plaintiff contends that by the time his *quantum meruit* claim made it to trial in New York, it was no longer about his release of his stock option rights, but about services rendered to Insead. In support, the plaintiff offers the final pretrial order and transcript pages from the trial covering jury instructions and the jury's responses to questions from the special verdict form. The problem is that the plaintiff did not present certified copies of these documents in compliance with

Fed.R.Civ.P. 44, and NIIT objected to their admissibility in its reply brief. The plaintiff was given

leave to file a surreply but in that filing, he surprisingly did not address NIIT's objection. And so,

the plaintiff has effectively conceded the inadmissibility of his evidence, for failure to respond to

a point may be deemed a waiver or a concession of the point. *See Gonzalez-Servin v. Ford Motor*

*Co.,* 662 F.3d 931, 933 (7th Cir. 2011); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010);

*United States  v. Vrdolyak,* 593 F.3d 676, 691 (7th Cir. 2010); *Midwest Generation EME, LLC v.*

*Continuum Chemical Corp.*, 2010 WL 2517047, 8 (N.D.Ill. 2010)(collecting cases).

There is, however, the district court's ruling on the parties' motions for summary judgment

in the New York case. In it, the court addressed Economist's Advantage's *quantum meruit* claim

in some detail. First, it rejected Insead's argument that Economist's Advantage's quasi-contract

claims were barred by the Joint Venture Agreement. Rejecting that contention, the court explained

that "the Joint Venture Agreement only covers the internal operations and financial structure of the

joint venture and does not address *the provision of services* to and compensation by outside entities,

such as Insead." *Economist's Advocate, LLC v. Cognitive Arts Corp.*, 2004 WL 728874, *10

(S.D.N.Y. 2004)(emphasis supplied).

That the *quantum meruit* claim is about the value of services and not about the value of the

stock option became even clearer thereafter when the court explained that:

> Economist's Advantage claims to have performed the following services for Insead
> between October 1999 and April 2001: conducted industry research and identified
> market opportunities, organized and managed a 3 day conference, created and
> delivered a conference presentation in London, arranged and conducted interviews
> at an Insead-sponsored conference, and conducted and taped executive interviews
> in San Francisco, New York, and Boston. According to Economist's Advantage,
> Insead accepted and enjoyed the benefits of Economist's Advantage's recording of
> the January 2000 conference and organization of executive interviews by utilizing
> these videotaped sessions in online learning proposals to at least two prospective

> clients and that Economist's Advantage's contributions are embodied in the work
> product produced by Insead and Cognitive Arts.

2004 WL 728874, *10.

Rule 44 problems or not, the plaintiff is obviously right. To succeed on his *quantum meruit* claim, he did not have to convince the court that he released his stock option rights because his claim was about services rendered. It does not matter what he alleged in his complaint; those allegations were obviously abandoned, and so there is no danger of creating a perception that either the New York court or this court was, or will be, misled. *Walton*, 643 F.3d at 1002. Because the plaintiff recovered for services rendered and not for value of his release of his stock option, there can be no double recovery if he recovers for his stock option here. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 454 (7th Cir. 1998)("The doctrine thereby bars a party from obtaining two separate litigation victories, or a 'double recovery,' by asserting opposite legal or factual contentions in two separate legal actions based on the same underlying facts."). It may be gamesmanship on the plaintiff's part, and seemingly opportunistic changes in position may raise some concern about underlying motivation especially since there is no explanation for the disappearance of his *quantum meruit* claim for his stock option release in the Southern District litigation – but judicial estoppel is inapplicable here. *Kimbrell v. Brown*, 651 F.3d 752, 757 (7th Cir. 2011).

## C.
## NIIT's Asset Purchase Agreement With Cognitive Arts

Beyond judicial estoppel, NIIT points out that it was not a party to the Joint Venture Agreement between Cognitive Arts and Economist's Advocate, and merely because it purchased Cognitive Arts' assets, NIIT argues, it is not responsible for its contractual obligations.

9

The general rule, in Illinois as elsewhere, is that even a purchase of all of a corporation's assets does not carry with it the assumption of the corporation's liabilities. *Oxxford Clothes XX, Inc. v. Expeditors Intern. of Washington, Inc*., 127 F.3d 574, 578 (7th Cir. 1997); *E.E.O.C. v. G-K-G, Inc*., 39 F.3d 740, 747 (7th Cir. 1994). And that principle applies "even if all the assets are transferred by the sale so that in effect the entire business has been sold, and the purchaser intends to continue it as a going concern." *E.E.O.C.*, 39 F.3d at 747.

There are some exceptions to this general rule which, if applicable, can result in a successor corporation like NIIT facing liability. They are: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligation. *Moriarty v. Svec*, 164 F.3d 323, 327 (7th Cir. 1998); *Diguilio v. Goss Intern. Corp*., 389 Ill.App.3d 1052, 1060-64, 906 N.E.2d 1268, 1276-79 (1st Dist. 2009). NIIT addresses all four exceptions in its memorandum in support of its motion for summary judgment, but does so in just a single paragraph of a few brief sentences.

First, there is the question of whether NIIT expressly or impliedly agreed to assume Cognitive Arts' responsibilities. NIIT points out that the Asset Purchase Agreement between it and Cognitive Arts "expressly *excludes* the assumption of any agreement between Cognitive Arts and either Economist's Advocate or Insead, . . . ." (*NIIT's Memorandum of Law*, at 11-12). NIIT finds support for this conclusion in the schedule of excluded assets attached to the Asset Purchase Agreement. (*NIIT's Memorandum of Law*, at 12). But that schedule lists, not "any agreement between Cognitive Arts and either Economist's Advocate or Insead," as NIIT suggests, but

"[a]greements with Insead *and* Economist's Advocate." (*Pl.Rsp.*, Ex. 9, Schedule 1.2 (emphasis supplied)).

If NIIT had wanted to draft an exclusion for agreements with Economist's Advocate *or* Insead, it could have easily done so. Ordinarily:

> the words "and" and "or" are not interchangeable terms. On the contrary, those words are used in the structure of the English language for entirely different purposes; "and" is strictly of a conjunctive nature and "or" is strictly of a disjunctive nature. . . . The substitution of these words is never resorted to except for strong reasons, and the words should never be so construed unless the context favors the substitution.

*Perkins & Will v. Security Ins. Co. of Hartford*, 219 Ill.App.3d 807, 813-814, 579 N.E.2d 1122, 112, (1st Dist. 1991)(citations and quotations omitted). NIIT doesn't refer to any case law on contract construction; it merely offers a conclusory, unsupported argument for summary judgment. But such an argument fails. *Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008). It is not the court's job to develop *and/or* support arguments on behalf of the parties. *Fabriko Acquisition Corporation v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008).

Moreover, given the context surrounding the drafting of the Asset Purchase Agreement, the parties were well aware that special care ought to be taken in delineating excluded assets. There was, of course, Cognitive Art's agreement with Economist's Advocate. And, there was, of course, Cognitive Art's agreement with Insead and Economist's Advocate – which happened to be the wording employed in the exclusion schedule.

Perhaps sensing that its terse and conclusory argument was unpersuasive, NIIT went a bit further in its reply brief. But that would have been too little, too late – as reply briefs are for replying, not for developing positions that ought to have been developed in the first instance, *Tellabs*

11

*Operations, Inc. v. Fujitsu Ltd*., 283 F.R.D. 374, 379 (N.D.Ill. 2012)(collecting cases) – had plaintiff argued that this point was waived. It did not do so. Instead, it sought leave to file a surreply. Thus, the waiver argument that could have been advanced was, itself, waived. *Id. See generally, Nunez v. United States*, 546 F.3d 450, 452 (7th Cir. 2008).

NIIT's first argument in its reply brief is that "Schedule 1.1(b) of the Asset Purchase Agreement, entitled, 'Assigned Contracts,' makes no mention of any agreement with Economist's Advocate and/or Dr. Krepps, much less the [Joint Venture Agreement ] at issue here." (*NIIT's Reply Brief*, at 8). But it didn't have to. Article 1.1, titled "Assets to be Acquired,"stated that NIIT agreed to purchase from Cognitive Arts:

> all right, title and interest of [Cognitive Arts] in and to all of the tangible and intangible assets of Seller used in the Business (other than the Excluded Assets (as defined in Section 1.2)), . . . including, *without limitation*, those line items reflected on [Cognitive Arts'] balance sheet dated as of September 30, 2002 and the following..

(*Pl.Rsp.*, Ex. 9, Article 1.1 (emphasis supplied)). The reference to Schedule 1.1(b) followed that introduction, but the use of the phrase "including without limitation" plainly reflects the parties' intent that the list was not intended to be exclusive or exhaustive. *Dunkin' Donuts Inc. v. Barr Donut, LLC*., 242 F.Supp.2d 296, 309 (S.D.N.Y. 2003); *Shugrue v. Continental Airlines,* 977 F.Supp. 280, 285–86 (S.D.N.Y.1997).

NIIT's reply brief next recast its judicial estoppel theory, arguing that because Economist's Advocate pleaded that it released the stock option rights it had under the Joint Venture Agreement, that meant there was no longer any agreement between Economist's Advocate and Cognitive Arts that did not involve Insead. (*NIIT's Reply Brief*, at 8). But, as already discussed, that's not what the case ended up being about – that claim changed into one for the value of services rendered.

12

Moreover, Economist's Advocate *also* pleaded that there was a three-party agreement among itself, Cognitive Arts, and Insead. (*Def.St.*, Ex. A, ¶¶ 11-12). In other words, the agreement Cognitive Arts had "with Insead *and* Economist's Advocate." (*Pl.Rsp.*, Ex. 9, Schedule 1.2 (emphasis supplied)).

NIIT then turns back to Schedule 1.2, pointing to the item: "Contracts with ISS, University of Washington, GE India and associated receivables and liabilities." NIIT's argument goes this way:

> According to [plaintiff's] reading of the agreement, that would mean that only multiparty agreements among Cognitive Arts *and* ISS, and the University of Washington, *and* GE India were excluded, while any bilateral contract between Cognitive Arts and *either* ISS, *or* University of Washington, *or* GE India were being assigned. But that is plainly not what the contracting parties intended. Rather, as can be seen in Schedules 1.1(b) and 4.16 to the Asset Purchase Agreement, no bilateral contract between Cognitive Arts and any of these individual entities was listed as being "assigned"; to the contrary, contracts with *either* ISS *or* the University of Washington were specifically listed as "*not* being assigned." (*See* Asset Purchase Agreement at Schs. 1.1(b) & 4.16 (emphasis supplied).)

This might be the best argument NIIT raises, but the presentation of it is so skeletal, so breezy, one cannot say with any confidence that it entitles NIIT to summary judgment on this Count. It seems that NIIT is saying there is no possible way there could be a 4-way agreement. Clearly there *could* be such a thing, because, after all, there was a 3-way agreement, at least putatively. NIIT, as it did in its opening brief, simply leaves too much to the imagination and to speculation.

NIIT's reference to Schedule 4.16 raises some problems with its position. While the schedule does list individual contracts with ISS and with the University of Washington as "not being assigned," it does not list an individual contract with GE India as "not being assigned." So what happened to the purported individual contract with GE India? If, as NIIT says, the entry, "Contracts with ISS, University of Washington, GE India and associated receivables and liabilities," refers to

individual contracts with those three entities, and those individuals contract are excluded – *i.e.*, "not being assigned", where is the "not being assigned" entry for the GE India contract on Schedule 4.16?

Second, Schedule 4.16 lists a contract Cognitive Arts had with Economist's Advocate, adding "Note this agreement is in litigation – please refer to litigation schedule,"and puts it in the category of *assignable*. Presumably, this meant that, depending on the outcome of that litigation, the contract would fall into the assigned category or would be invalid. So that would mean the Joint Venture Agreement was assignable, while – according to the wording of Schedule 1.2 – the three-party contract covering the release of the stock option was excluded from the asset purchase. This suggests the opposite of NIIT's rather conclusory position. (*NIIT's Reply*, at 10 ("the Letter Agreement [the Joint Venture Agreement ] was excluded from Cognitive Arts' sale of its assets to NIIT.").

The terms of the asset purchase agreement provide further confusion. Oddly, the "agreement in litigation" in the New York case was the one purportedly among Cognitive Arts, Insead, and Economist's Advantage – the termination agreement – not the original Joint Venture Agreement – which was between just Cognitive Arts and Economist's Advocate. (Dkt. 43-3, ¶¶ 11-12, 23-26, 31). Again, that's the three-party agreement, not an agreement between just Cognitive Arts and Economist's Advantage, which is listed in Schedule 4.16 as being in litigation and assignable.

Finally, NIIT points to line nine of Schedule 1.2 – the roster of excluded assets – which lists "any of [Cognitive Arts'] Contracts which are not Assigned Contracts, unless specifically assumed by [NIIT] pursuant to Section 3.3(b) of the Asset Purchase Agreement." It argues that in Article 1.1(b) "Assigned Contracts" are specifically defined as contracts listed on the Schedule of Assigned

Contracts, Schedule 1.1(b), and Cognitive Arts' Joint Venture Agreement with Economist's Advocate is not listed.  (*NIIT's Reply*, at 10).  Article 1.1(b) reads:

> [Cognitive Arts'] executory contracts with respect to the Business to the extent assignable (the "Assigned Contracts") on Schedule 1.1(b), together with all confidentiality, noncompetition and nonsolicitation covenants running in favor of [Cognitive Arts] set forth on Schedule 1.1(b).

So, actually, Article 1.1(b) defines "Assigned Contracts" as "[Cognitive Arts'] executory contracts with respect to the Business to the extent assignable."  As already noted, Cognitive Arts' agreement with Economist's Advocate is listed as "assignable" on Schedule 4.16.  The definition of "Assigned Contracts", then, does not require them to be on Schedule 1.1(b).  The wording of article 1.1(b) – and the imposition of the parenthetical prior to the reference to Schedule 1.1(b) allows for some assignable contracts to be listed in Schedule 1.1(b) and some to not be.

In the end, NIIT's arguments regarding the wording of its Asset Purchase Agreement with Cognitive Arts do not resolve questions so much as they raise them.  It may be due to the draftsmanship of the Asset Purchase Agreement, or the skeletal approach of NIIT's rather skeletal briefs, or its paraphrasing of the Asset Purchase Agreement's terms rather than focusing on its actual wording.  But the fact remains that NIIT has not met its initial burden of showing that summary judgment is appropriate on the question of whether no exceptions to the general rule against successor corporate liability apply here. *See Celotex*, 477 U.S. at 323; *Logan*, 96 F.3d at 978.  As such, the remaining three exceptions need not be addressed and NIIT's motion must be denied.

DATE: 6/12/13                   ENTERED:_____
                                UNITED STATES MAGISTRATE JUDGE

15