UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW B. KREPPS, )
)
        Plaintiff, )
) No. 11 C 8787
v. )
) Magistrate Judge Jeffrey Cole
NIIT (USA), INC., )
)
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Matthew Krepps has moved for summary judgment on the question of whether NIIT assumed the liabilities and obligations of a Joint Venture Agreement between Economist's Advocate and Cognitive Arts when it purchased Cognitive Arts. The answer to that question turns on the interpretation of the Asset Purchase Agreement between NIIT and Cognitive Arts.[1] One of the obligations under the Joint Venture Agreement is that Mr. Krepps be allowed to convert his shares in the Joint Venture into Cognitive Arts stock. And, the Joint Venture Agreement stated that it would be binding on Cognitive Arts' successors and assigns.

NIIT's earlier attempt to obtain summary judgment on this issue failed largely due to the ambiguity of the Asset Purchase Agreement it prepared for its "purchase" of Cognitive Arts.[2] And that ambiguity existed notwithstanding its author's claim that the contract was drafted to "delineate as explicitly as possible those assets and liabilities that [NIIT] is acquiring, versus those assets and

---

[1] The complicated history of this dispute is discussed in *Krepps v. NIIT (USA), Inc.*, 2013 WL 2636879 (N.D.Ill. 2013) and *Krepps v. NIIT (USA), Inc.*, 2012 WL 1532227 (N.D.Ill. 2012).

[2] The parties dispute the nature of the transaction between NIIT and Cognitive Arts. *See Krepps*, 2012 WL 1532227.

liabilities that are to be excluded."[3] But that is not what occurred. Instead of clarity and simplicity, there is complexity and uncertainty.

In order to defend against plaintiff's motion for summary judgment, NIIT now finds itself having to argue that it bollixed the drafting of the Asset Purchase Agreement, rendering it ambiguous.[4] If that's the case, extrinsic evidence is necessary, and Mr. Krepps' motion for summary judgment must be denied. *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 686-87 (7th Cir. 2013); *Citadel Group Ltd. v. Washington Regional Medical Center*, 692 F.3d 580, 587 (7th Cir. 2012). Of course, a contract is not ambiguous simply because one or both of the parties say it is. A contract is ambiguous if "'its language is reasonably and fairly susceptible to more than one meaning.'" *Emergency Medical Care, Inc. v. Marion Memorial Hosp.*, 94 F.3d 1059, 1061 (7th Cir. 1996).

In the Asset Purchase Agreement, NIIT purported to list those contracts it would be assuming from Cognitive Arts and those it would not. NIIT contends vehemently that it "wanted nothing to do with any contract Cognitive Arts may have had with Economist's Advantage . . . ." (*NIIT's Response* at 2). But rather than simply stating in the Asset Purchase Agreement that the Joint Venture Agreement between Cognitive Arts and Economist's Advantage was excluded, it drafted a labyrinthine document meandering from provisions to schedules and back again, that it now suggests was seasoned with mistakes. (*NIIT's Response* at 2, 4, 6, 9-11).

**A.**

---

[3] *See* Declaration of Andrew Schutt, which is attached as an exhibit to Mr. Krepps' Motion for Summary Judgment.

[4] Because of its claim that the agreement is ambiguous, NIIT has submitted the affidavit of Mr. Schutt in an attempt to explain what the document means.

2

At the outset, the parties are at odds over what law applies to the interpretation of the Asset Purchase Agreement. The agreement, itself, states that Georgia law applies, but Mr. Krepps favors the application of Illinois law and argues that NIIT has waived adherence to the agreement's choice-of-law provision by relying on Illinois law in the previous round of briefing on NIIT's motion for summary judgment. To be sure, in that briefing, NIIT did rely on Illinois law when discussing the issue of successor liability. But, in those discussions, it did note that contract interpretation – as opposed to successor liability – was controlled by Georgia law. And it reserved the right to argue that Georgia law applied to issues other than successor liability. (*NIIT's Sur-Reply*, at 4-5). And so, we shall abide by the contract's specification of Georgia law even though in the end, it doesn't make much of a difference, as Georgia law on contract interpretation is not unique or different from that of Illinois.

Since Justice Holmes' classic article, *The Path of the Law,* 10 Harv.L.Rev. 457 (1897), there has been agreement by all American courts that the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs, not on the parties having meant the same thing but on their having said the same thing." *Id.* at 464. *See also Paxton-Buckley-Loda Educ. Ass'n v. Ill. Educ. Labor Relations Bd.,* 304 Ill.App.3d 343, 350, 710 N.E.2d 538 (4th Dist.1999). Thus, as in Illinois, Georgia's cardinal rule of contract construction is to ascertain the intent of the parties, as evidenced by the language of the contract. *Calhoun, GA NG, LLC v. Century Bank of Georgia*, 320 Ga.App. 472, 474-75, 740 S.E.2d 210, 212-13 (Ga.App. 2013); *Garrett v. So. Health Corp. of Ellijay,* 320 Ga.App. 176, 182, 739 S.E.2d 661 (2013); *Gallagher v. Water Tower Realty Co. v. Fordham 25 E. Superior, L.L.C.*, 404 Ill.App.3d 658, 665, 936 N.E.2d 1127, 1133 (1st Dist. 2010). Neither in Georgia nor in Illinois do we "take a tour

3

through [a party's] cranium, with [the party] as the guide." *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 814 (7th Cir.1987).

While one party to an agreement – like NIIT here – will often contend that the agreement couldn't possibly mean what it says if the draftsmanship tends to go against that party's interests (*NIIT's Response* at 5), subjective intent is irrelevant. *Greenwald v. Kersh*, 275 Ga.App. 724, 727, 621 S.E.2d 465, 468 (Ga.App. 2005)("[C]ourts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent."); *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009)("Illinois follows the objective theory of intent, whereby the court looks first to the written agreement and not to the parties' subjective understandings.").

But, where the wording of the contract leaves the intent of the parties in doubt – that is, where reasonable but differing constructions can be placed on the language – ambiguity exists. *Thompson v. LaFarge Bldg. Materials, Inc*., – Ga.App. –, –, 746 S.E.2d 908, 911 (2013); *Estate of Pitts v. City of Atlanta*, – Ga.App. –, –, 746 S.E.2d 698, 702 (2013); *Fischel v. Souri*, 2013 WL 1296200, *7, – Ill.App.3d –, – (1st Dist. 2013). When a contract is ambiguous, Georgia law has a bit of a quirk: the court is to resort to the state's statutory construction rules. *Monitronics Intern., Inc. v. Veasley*, – Ga. App. –, –, 746 S.E.2d 793, 801 (2013); *Willesen v. Ernest Communications, Inc*., – Ga. App. –, –, 746 S.E.2d 755, 758 (2013).

Those rules are not much different from ordinary rules of construction. NIIT focuses on one in particular:

4

> The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be transposed, and conjunctions substituted for each other.

Ga. Code Ann., § 13-2-2(6). Just as importantly, however, those rules of construction – just like Illinois's – dictate that ambiguities are to be construed against the drafting party or the party undertaking the obligation. Ga. Code Ann., § 13-2-2(5); *Duldulao v. St. Mary of Nazareth Hospital Center,* 115 Ill.2d 482, 493, 505 N.E.2d 314, 319 (1987); *Zwayer v. Ford Motor Credit Co.*, 279 Ill.App.3d 906, 910, 665 N.E.2d 843, 846 (1st Dist. 1996). Here, that is NIIT.

If all that fails, extrinsic or parol evidence may come into play. *Coca-Cola Bottlers' Sales and Services Co. LLC v. Novelis Corp.*, 311 Ga.App. 161, 168, 715 S.E.2d 692, 698 (2011); *Farm Credit Bank of St. Louis v. Whitlock,* 144 Ill.2d 440, 447, 581 N.E.2d 664 (1991). But, at that point, the interpretation of the contract becomes an issue of fact. *Monitronics*, – Ga. App. at –, 746 S.E.2d at 801; *Goody Products, Inc. v. Development Authority of City of Manchester*, 320 Ga.App. 530, 535, 740 S.E.2d 261, 268 (2013); *McBride v. McBride*, 990 N.E.2d 1184, 1195 (1st Dist. 2013); *Harmon v. Gordon*, 712 F.3d 1044, 1051 (7th Cir. 2013).[5]

**B.**

---

[5] In this regard, NIIT has jumped the gun and submitted extrinsic evidence consisting of affidavits from Mr. Schutt one of the attorneys who drafted the Asset Purchase Agreement, and one of its employees, attesting that the intent of the agreement was to exclude any contract between Cognitive Arts and Economist's Advantage. But the motion for summary judgment deals with the language of the agreement – meaning subjective intent is irrelevant – and such parol evidence will be admissible only if the agreement is determined to be ambiguous, as NIIT contends it is. Such evidence might also raise credibility questions which would not be amenable to summary judgment. *O'Leary v. Accretive Health, Inc*., 657 F.3d 625, 630 (7th Cir. 2011). Here, there are disputed issues of material fact precluding summary judgment.

Interpretation of the Agreement must begin with Section 1.1 which is titled, hopefully enough, "Assets to be Acquired":

> . . . [NIIT] agrees to purchase from [Cognitive Arts], and [Cognitive Arts] agrees to sell to [NIIT] . . . all right, title and interest of [Cognitive Arts] in and to all of the tangible and intangible assets of [Cognitive Arts] used in the Business (other than the Excluded Assets (as defined in Section 1.2)) [6], . . . (collectively, the "Purchased Assets"), including, without limitation, . . . the following:
>
>                 \*      \*      \*
>
> (b) [Cognitive Arts'] executory contracts with respect to the Business to the extent assignable (the "Assigned Contracts") on Schedule 1.1(b), together with all confidentiality, noncompetition and nonsolicitation covenants running in favor of [Cognitive Arts] set forth on Schedule 1.1(b); . . .

(*Plaintiff's Exhibit C*).

Stripped of its excessive verbiage, NIIT agreed to acquire "all" of Cognitive Arts assets, except for excluded assets, which were listed in separately numbered paragraphs on Schedule 1.2 (*Ex. E*). It agreed that it would be acquiring Cognitive Arts' executory contracts, if they were assignable – set out in Schedule 1.1(b). But, given the oceanic phrase, "including, without limitation," the Agreement was subject to being interpreted as providing that those contracts specifically listed in Section 1.1 were not the only ones NIIT contemplated it would be acquiring.

The phrase, "including, without limitation," is a staple of contracts of all sorts.[7] Indeed, a Westlaw search reveals many hundreds, if not thousands of contract (and related) cases, where the phrase is employed as a matter of course. The plain meaning of the phrase is "to contain as part of something" – to "indicate[ ] a partial list." Black's Law Dictionary, 766 (7th edition 1999). All the

---

[6] Schedule 1.2 is attached to the Motion as Exhibit E.

[7] It is even employed in criminal statutes. *See, e.g., State v. Fannin,* 1995 WL 739897, 2 (Ohio App. 10th Dist. 1995).

cases agree that "even without the additional if not redundant language of 'without limitation,'" *St. Paul Mercury Insurance. Co. v. Lexington Insurance. Co.,* 78 F.3d 202, 207 (5th Cir. 1996), the term "including" is one of expansion rather than limitation.[8] *See, e.g., Federal Election Com'n v. Massachusetts Citizens for Life, Inc.*, 769 F.2d 13, 17 (1st Cir. 1985); *Cintech Indus. Coatings, Inc. v. Bennett Industries, Inc.*, 85 F.3d 1198, 1202 -1203 (6th Cir. 1996); *Mayor v. Jean Philippe Fragrances, Inc.*, 1994 WL 9684, 5 (S.D.N.Y. 1994); *In re Linerboard Antitrust Litigation,* 443 F.Supp.2d 703, 714 (E.D.Pa. 2006); *Krepps*, 2013 WL 2636879, *7.

Thus, given the breadth of the language NIIT employed in the Asset Purchase Agreement, it cannot be said that the Cognitive Arts/Economist's Advocate Joint Venture Agreement was not among the assets to be acquired. And so the question is whether Schedule 1.2 excluded that asset. [(*NIIT's Response* at 4; Dkt. # 54, at 8].

**C.**

After Section 1.1 of the Asset Purchase Agreement provided a non-exhaustive list of assets that NIIT would be acquiring, Section 1.2 refers the reader to Schedule 1.2 for a list, set forth in numbered paragraphs, of assets that were to be excluded from the acquisition. Section 1.2 provides:

> Notwithstanding anything to the contrary contained in Section 1.1 hereof, [NIIT] shall not acquire and [Cognitive Arts] shall not transfer to [NIIT] [Cognitive Arts'] corporate minute and stock books and files, or any assets or files held under or relating to . . . (iv) those assets identified on Schedule 1.2 hereto (collectively, the "Excluded Assets").

---

[8] The utilization of the phrase "including without limitation" is an example of resort by drafters of legislation and contracts, alike, to "'include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach.' Antonin Scalia & Bryan A. Garner, *Reading Law* 176–77." *Doe v. Boland*, 698 F.3d 877, 881-882 (6th Cir. 2012). *See also Spectrum Health-Kent Community Campus v. N.L.R.B.,* 647 F.3d 341, 346 (D.C. Circuit 2011).

(*Plaintiff's Exhibit C*). Schedule 1.2 did not make specific or explicit reference to the Joint Venture Agreement between Cognitive Arts and Economist's Advocate. However, among the excluded assets listed on Schedule 1.2 are "[a]greements [Cognitive Arts has] with Insead *and* Economists [sic] Advocate." (*Plaintiff's Exhibit D*)(Emphasis supplied). As already noted, the Joint Venture Agreement that NIIT wants to avoid – and Mr. Krepps wants it to be bound by – was an agreement between Cognitive Arts and Economist's Advocate – an agreement to which Insead was not a party.

Mr. Krepps' position is that, because Schedule 1.2 is phrased conjunctively rather than disjunctively, it is referring to a tripartite agreement among Cognitive Arts, Insead, and Economist's Advocate, rather than the two party Joint Venture Agreement Cognitive Arts had with Economist's Advocate. And thus, the latter, he insists, was not excluded from the purchase transaction. There is a textual difficulty with this reading of the itemized exclusion, since it refers not to "an agreement" but to "agreements" – plural. That obviously undercuts the interpretation that what was being excluded was a single, tripartite agreement. Mr. Krepps' interpretation would require that there be multiple three-way agreements with Insead and Economist's Advantage. But it is undisputed that there is only one.

NIIT's position is that the wording "is...reasonably susceptible to an interpretation that the Joint Venture Agreement was an excluded asset . . . ." (*NIIT's Response* at 6). However, this construction depends upon eliminating the word, "and" from the line item exclusion and substituting the phrase, "and/or." Only then can NIIT argue that the line item exclusion could reasonably be read to refer to separate two-party agreements Cognitive Arts had with Insead *or* Economist's Advantage. There are several difficulties with this approach.

8

First, while we know Cognitive Arts had a tripartite agreement with Insead and Economist's Advantage, we don't know if it had separate, two-party agreements with them as well. NIIT points to an unexecuted draft of an agreement that was to be between Cognitive Arts and Insead, had it been finalized. (*NIIT's Response* at 11-12). But it wasn't, and no canon of construction permits a repeal of reality. Obviously, it would not have been necessary or sensible for Schedule 1.2 to exclude proposed, unexecuted, or draft agreements – whatever the document or documents may be – from the purchase: they had no independent, legal status and would not fit within the commonly understood definition of "assets." And it was Cognitive Arts' "assets" that were being purchased.

NIIT's resort to examples of similar wordings only serves to undermine its position. (*NIIT's Response* at 10). The line item at issue on the Schedule of Excluded Assets is not, as NIIT submits, akin to saying "Bill went on dates with Jenny and Cindy." It's akin to saying "Bill won't go on dates with Jenny and Cindy" because it is an expression of contracts NIIT refuses to acquire. As such, Bill isn't interested in "unconventional romantic groupings," and it would follow that NIIT wasn't interested in tripartite agreements. If the phrase were "Bill won't go on dates with Jenny *or* Cindy," then Bill isn't interested in a conventional outing with either of the two women. And, it would follow that NIIT wasn't interested in two-party deals with either Insead or Economist's Advantage. NIIT's three-way chess game example is even worse because, as NIIT itself points out, there is no such thing. Here, though, there *is* such a thing as a three-party agreement among Cognitive Arts, Insead, and Economist's Advantage.

NIIT also relies on Georgia's rule allowing the disregard of the rules of grammatical construction and the substitution of conjunctions, arguing that all that need be done here is to substitute "and/or" for "and" in the exclusion of contracts Cognitive Arts had with Insead, and

Economist's Advantage. (*NIIT's Response* at 11). But the suggestion assumes the permissibility of the substitution, and thus begs the very question to be decided. And, although it would be just as easy – if not easier – to regard the use of the plural form "agreements" as a correctable error, NIIT is dead-set against that. (*NIIT's Response* at 9-11).

Given the inflexible rule that ambiguity in contract language is to be construed against the draftsman, *Buford-Clairmont Co., Ltd. v. RadioShack Corp.*, 275 Ga.App. 802, 622 S.E.2d 14 (2005), the loss of the "s" would take precedence over the substitution of "and/or" for "and." And that would result in the exclusion reading: "contract between Cognitive Arts, Insead, and Economist's Advantage." Plainly, that is not the two party joint venture agreement Mr. Krepps insists NIIT acquired in the Asset Purchase Agreement.

Significantly, in the Asset Purchase Agreement, NIIT exhibited no difficulty employing the "and/or" term that it now argues the court should import into the Agreement on its behalf in place of "and" – the term it chose to use in the list of excluded assets. For example, Section 2.2(b) provided that NIIT would not assume "income tax withholding, payroll *and/or* unemployment tax." (Emphasis supplied). And in Section 4.17, NIIT had Cognitive Arts warrant that it "owns *and/or* has the sole and exclusive right to use" intellectual property. (Emphasis supplied). This shows beyond peradventure of doubt that NIIT knew how to use the phrase "and/or" when it wanted to. In construing statutes, purposeful use of language in one section shows the drafter knew how to use that phrase and that the use of a different phrase in a different section or clause was not accidental and without meaning. *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S.Ct. 2433, 24 (2010). Just so here. NIIT's purposeful, multiple uses of the phrase, "and/or," in the sections of the Asset

Purchase Agreement preclude the conclusion that its use of the word, "and," can be ignored and should be replaced by the phrase, "and/or."

A bit more confusion is supplied by NIIT's use of the word, "and," elsewhere in the Asset Purchase Agreement. Schedule 1.2 also excludes from the ambit of the Agreement "Contracts with ISS, University of Washington, GE India and associated receivables and liabilities." (*Plaintiff's Ex. E*, ¶5). NIIT argues that this obviously cannot mean only a four-way agreement among those diverse and unrelated parties was excluded from the assets being purchased. Hence, the same analysis should apply to Section 1.2's exclusion of Cognitive Arts' "agreements with Economist's Advocate and Insead." But the difficulty is that there *is* a three-party agreement between Cognitive Arts, Economist's Advocate, and Insead, while there is no four-party agreement – only separate agreements with the University of Washington, ISS, and GE India. Thus, the interpretation of the exclusion in ¶5 of the Schedule of Excluded Assets that refers to the diverse entities is not susceptible to multiple, reasonable interpretations.

The situation is not clarified by resort to Schedule 4.16, the Schedule of "Contracts and List of Contracts Breached by Assignment." That Schedule separately lists, on two separate pages, an agreement between Cognitive Arts and ISS and a separate agreement between Cognitive Arts and the University of Washington. Next to each of the separate line item entries appear the words, "not being assigned." These separate itemizations militate against the argument that the use of the conjunctive in the List of Excluded Assets (Schedule 1.2) should be ignored. The inescapable fact that haunts this case is that there is a three-party agreement between Cognitive Arts, ISS, and Economist's Advocate, while there is no such multiparty agreement between the entities that understandably are separately listed on Schedule 4.16.

Finally, reading the exclusion in Schedule 1.2 of "Contracts with ISS, University of Washington, GE India" as referring to three separate contracts is required by the immediately following phrase "and associated receivables and liabilities." (*Ex. E*). If there was one contract, it would have been unnecessary to have that phrase as there would have been no receivables and liabilities that had to be allocated separately – all would have been "associated" with that single contract and the phrase would have been surplusage. Thus, a natural reading of the words used to describe the exclusion is that there were three separate contracts with separate receivables and liabilities connected to each contract. That is not true with ¶ 6 of Schedule 1.2.

This construction is further confirmed by Schedule 4.16, which is a list of "Contracts Breached By Assignment." (*Ex. F*). It lists a contract with ISS and a separate contract with the University of Washington as not being assigned. (*Ex. F*). These are obviously separate agreements. That degree of clarity does not appear in the unified reference in ¶5 of Exhibit E, the List of Excluded Assets. In short, a reading of the schedules to the Asset Purchase Agreement militates against the notion that there could possibly be a multi-party contract with ISS, the University of Washington and GE India and confirms that the use of the word "and" in ¶¶5 and 6 of Schedule 1.2 are not to be read equivalently. The same, cannot be said of the schedule of Excluded Asset Reference to "Contracts With Cognitive Arts, Insead, and Economist's Advocate."

**D.**

The Asset Purchase Agreement covers "assumption of liabilities" in Section 2.2:

(a) Purchaser [NIIT] agrees to assume, undertake and perform, from and after the Closing Date, only the following liabilities and obligations existing or incurred prior to the Closing Date or arising out of events or transactions occurring prior to the closing date: (I) all liabilities and obligations of Seller under and relating to the Assigned Contracts . . .

(*Plaintiff's Exhibit C*). "Assigned Contracts" is defined in Section 1.1(b) as "executory contracts with respect to the Business to the extent assignable (the "Assigned Contracts"). . . ." (*Plaintiff's Exhibit C*). The question under this section becomes whether the Joint Venture Agreement between Cognitive Arts and Economist's Advantage is an executory contract that is assignable.

This is where schedule 4.16 comes in, with, unfortunately, further uncertainty. It is a Schedule of "Contracts and List of Contracts Breached by Assignment." (*Ex. F*). On the first page of the Schedule, under the heading: "Custom Contracts/Development Partners" there appear two columns. The left-hand column is captioned "Contracting Party," while the adjacent column to the right is captioned "Assignable by Cognitive Arts." Half-way down the page in the left hand column appears: "Economist's Advocate – note this agreement is in litigation – please refer to litigation schedule." In the column on the right next to this entry appears the word, "assignable." Mr. Krepps claims this is the Joint Venture Agreement, which Section 4.16 says is to be assigned. But is it?

The Litigation schedule – Schedule 4.18 – lists Economist's Advantage's suit against Cognitive Arts, *et al*, in the Southern District of New York, No. 01 CV 9486. (*Plaintiff's Exhibit G*). Case No. 01 CV 9486, however, is *Amalgamated Cotton v. Advanced Uniform*. The more likely candidate is Case No. 01 CV 9468, which was *Economist's Advantage v. Cognitive Arts, and Insead*. There, Economist's Advantage charged Cognitive Arts with breach of the Termination Agreement – the three-party agreement between Economist's Advantage, Cognitive Arts, and Insead. Contrary to Mr. Krepps' claim, that's not the Joint Venture Agreement. The question, then, is left unanswered.

## CONCLUSION

In the end, despite what no doubt was the intent of the parties that the Asset Purchase Agreement enunciate with clarity what was being purchased and what was not, the Agreement was vague and ambiguous on the question of the fate of the Joint Venture Agreement between Cognitive Arts and Economist's Advocate. Because it is, and because there are disputed issues of material fact, Mr. Krepps' motion for summary judgment [#67] must be denied. *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 687 (7th Cir. 2013).

Nothing in this Opinion should be deemed to express any view on the proper construction of the Asset Purchase Agreement or the ultimate resolution of the case.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/24/14